UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DIEGO DE PAZ VELASCO, also known
as Errik Herrera Dellanos,

Petitioner,

v.                                                    25-CV-1236-LJV
                                                      DECISION & ORDER
TAMMY MARICH et al.,

Respondents.

---

On November 21, 2025, Diego De Paz Velasco filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2241 challenging the validity of his detention at the

Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, Docket Item 1, and

requesting his "immediate release from custody," *id.* ¶ 5.  More specifically, De Paz

Velasco asked this Court to declare that his detention at BFDF violated the Constitution;

the Immigration and Nationality Act ("INA") and its related regulations; the

Administrative Procedure Act ("APA"); and *United States ex rel. Accardi v.*

*Shaughnessy*, 347 U.S. 260 (2020).  *Id.* ¶¶ 51-97.  The government then moved to

dismiss the petition, Docket Item 7, and De Paz Velasco responded, Docket Item 9.

On December 19, 2025, this Court heard oral argument on De Paz Velasco's

petition and the government's motion to dismiss.  *See* Docket Item 12.  During that

proceeding, the government conceded that if the Court applied its prior reasoning in

*Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 150-54 (W.D.N.Y. 2025), to this case, it

would grant De Paz Velasco's petition and release him.  *See* Docket Item 11.  The

Court therefore "determined that the petitioner [wa]s likely to succeed on his petition in

light of this Court's decision in *Ceesay*" and ordered his temporary release from ICE custody pending further briefing. *See id.* The next day, De Paz Velasco was released from ICE custody on electronic monitoring. *See* Docket Item 13 ¶ 13.

The Court now addresses the merits of De Paz Velasco's petition, Docket Item 1, as well as the government's motion to dismiss, Docket Item 7. And for the reasons that follow, this Court grants De Paz Velasco's petition in part, orders his continued release from custody under his prior order of supervision, and denies the government's motion to dismiss.

## **BACKGROUND**[1]

De Paz Velasco is a 40-year-old native and citizen of Guatemala who has lived in the United States for more than 20 years. *See* Docket Item 1 ¶¶ 15-16. He has "four young U.S.[-]citizen children" and "strong community ties" in this country. *Id.* ¶¶ 15, 27.

De Paz Velasco entered the United States in about 2004. *Id.* ¶ 16. In 2007, he "was arrested by immigration officials . . . in relation to a traffic checkpoint." *See id.* He apparently was released, but unbeknownst to him, an Immigration Court in Cleveland, Ohio, later issued "an *in absentia* removal order." *See id.* ¶¶ 16-17.

After almost two decades without further issue, De Paz Velasco encountered immigration officials when he and his family visited Niagara Falls. *Id.* ¶ 17. The officials gave him "an [o]rder of [s]upervision which ordered him to report for . . . in-person

---

[1] The Court takes these facts from the petition, Docket Item 1, the government's motion to dismiss, Docket Item 7, and the parties' stipulated facts, Docket Item 13.

check-in[s with ICE beginning] in September 2025." *See id.*  De Paz Velasco complied with all conditions of that order.  *Id.* ¶ 19.

Nevertheless, when De Paz Velasco reported to ICE in Syracuse "for a scheduled check-in" on November 12, 2025, he was unexpectedly taken into custody.[2] Docket Item 13 ¶ 1.  During the check-in, ICE officers "confirmed contact and household information with[ ]De Paz Velasco," reviewed some of his documents, and told him "that they noticed he had an alias and [that] he was going to be detained in Batavia."  *Id.* ¶¶ 2-4.  That same day, ICE Deportation Officer Alec Polchlopek "served a [F]orm I-200 'Warrant for Arrest of Alien' on . . . De Paz Velasco."  *Id.* ¶ 8.  The warrant was signed by "someone on behalf of Supervisory Detention and Deportation Officer J. Bell," and Officer Polchlopek "read its contents to [De Paz Velasco] in Spanish."  *Id.* ¶¶ 8-9.

Both sides agree that Officer Polchlopek also conducted an "informal interview" of De Paz Velasco, but they disagree about the details of that interview.  *See id.* ¶ 10. Officer Polchlopek completed an "internal worksheet" stating that he had interviewed De Paz Velasco on November 12, 2025, to "afford [him] an opportunity to respond to the reasons for revocation of his . . . order of supervision."  *Id.*; Docket Item 6 at 6.[3]  ICE says that De Paz Velasco "made no oral response [during the informal interview] and did not provide any written statement or documents."  Docket Item 13 ¶ 10.  According to ICE's records, "the interview was initiated in Spanish but [De Paz Velasco] refused to

---

[2] On November 17, 2025, De Paz Velasco moved to reopen his immigration case in Cleveland, but that motion has since been denied.  *See* Docket Item 8 at 2-3.

[3] Page numbers in docket citations refer to ECF pagination.

cooperate." *Id.* But De Paz Velasco "recalls the conversation being short and in English, which he can understand [only] to a limited degree." *Id.*

De Paz Velasco also received a Notice of Revocation of Release at his check-in with ICE on November 12, 2025. *Id.* ¶ 11. Officer Polchlopek served De Paz Velasco with the notice at 2:00 p.m., and Assistant Field Office Director Michael K. Ball signed it at 2:31 p.m. that same day. *Id.* ¶¶ 11-12. The notice informed De Paz Velasco that he would be kept in ICE custody "based on a review of [his] file and/or [his] personal interview on account of changed circumstances in [his] case" and that "there [wa]s a significant likelihood of [his] removal in the reasonably foreseeable future." Docket Item 6 at 4.

De Paz Velasco was then transferred to BFDF. Docket Item 1 ¶ 29. He filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 less than two weeks later.

## **LEGAL PRINCIPLES**

### I.    SECTION 2241 PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are

4

reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts[] and dispose of the matter as law and justice require.'" *Id.* (alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

## II.   MOTION TO DISMISS

The government has moved to dismiss De Paz Velasco's habeas petition for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a viable claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Docket Item 7.  "A court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)."  *Williams v. DHS/ICE/Immigr. Ct.*, 2023 WL 3585849, at *1 (W.D.N.Y. May 22, 2023) (quoting *Hines v. United States*, 2023 WL 2346540, at *2 (D. Conn. Mar. 3, 2023)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  Along the same lines, a case is properly dismissed for failure to state a claim under Rule 12(b)(6) if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability

5

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A court faced with a motion to dismiss [under] both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

### DISCUSSION

### I.    SUBJECT MATTER JURISDICTION

The government argues that 8 U.S.C. § 1252 deprives this Court of jurisdiction over De Paz Velasco's petition.  Docket Item 7-1 at 11-13.  But in *Ceesay*, this Court held that section 1252 did not bar its review of a challenge to the manner in which ICE executed a petitioner's removal order.  781 F. Supp. 3d at 150-54.  And for the reasons explained in *Ceesay*, the Court rejects the government's jurisdictional arguments. *See id.*

### II.    DUE PROCESS

De Paz Velasco argues that ICE violated his due process rights when it detained him.  *See* Docket Item 1 ¶ 4.  More specifically, he says that the revocation of his release did not comport with due process because ICE failed to follow its own regulations in three ways.

First, De Paz Velasco says that the official who revoked his release did not have the authority to do so. *Id.* ¶ 40.  Second, he says that ICE failed to provide him with an interview so that he could "respond to any reasons for revocation they may have mentioned to him." *Id.* ¶ 26.  Third, he says that ICE did not give him an "opportunity to prepare for an 'orderly departure.'" *Id.* ¶ 49.  The government disagrees and says that De Paz Velasco has not shown that ICE violated any of his rights when it revoked his release and detained him. *See* Docket Item 7-1 at 14-19.

### A.  Statutory Background

Section 1231 governs the detention and removal of noncitizens with final orders of removal.  8 U.S.C. § 1231.  It "provides that, after 'a[ noncitizen] is ordered removed,' the [g]overnment shall remove the [noncitizen] within a ninety . . . day period called the 'removal period.'" *E.M.M. v. Almodovar*, 2025 WL 3077995, at *2 (S.D.N.Y. Nov. 4, 2025) (quoting 8 U.S.C. § 1231(a)(1)(A)).  That period begins "on the latest of" three possible dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Hechavarria v. Sessions*, 891 F.3d 49, 54-55 (2d Cir. 2018), *as amended* (May 22, 2018).

"If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).

7

The regulations shall include provisions requiring the [noncitizen]—

> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States [g]overnment;
>
> (C) to give information under oath about the [noncitizen]'s nationality, circumstances, habits, associations, and activities, and other information [ICE] considers appropriate; and
>
> (D) to obey reasonable written restrictions on the [noncitizen]'s conduct or activities that [ICE] prescribes for the [noncitizen].

*Id.*

De Paz Velasco was issued "an *in absentia* removal order" in 2007. *See* Docket Item 1 ¶ 16. Therefore, he is detained under 8 U.S.C. § 1231.[4]

### B. Regulatory Framework: 8 C.F.R. § 241.4

Noncitizens detained under section 1231 and then released on an order of supervision can later be re-detained if the order of supervision is revoked. 8 C.F.R. § 241.13(i); 8 C.F.R. § 241.4(l). Two ICE regulations—8 C.F.R. § 241.4 and 8 C.F.R. § 241.13—govern revocation of an order of supervision. *See E.M.M.*, 2025 WL 3077995, at *3.

Section 241.4 authorizes ICE to issue an order of supervision for a number of reasons but to revoke such an order only for two reasons. "First, [ICE] may revoke an [order of supervision granted under section 241.4] if the [noncitizen] violates any . . .

---

[4] The parties do not dispute that De Paz Velasco is detained under section 1231. *See* Docket Item 1 ¶¶ 35-41 (highlighting section 1231 in the legal framework governing the procedures for revoking De Paz Velasco's release); Docket Item 7-1 at 6 ("[De Paz Velasco] is . . . detained [under section] 1231 as a [noncitizen] with a final order of removal.").

terms of his or her release."  *Id.* (citing 8 C.F.R. § 241.4(l)(1)).  Second, ICE can revoke an order of supervision granted under section 241.4 if certain findings are first made by the ICE Executive Associate Director[5]—or by an ICE district director or other authorized official if the district director or authorized official finds that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]."  8 C.F.R. § 241.4(l)(2); *see Ceesay*, 781 F. Supp. 3d at 159-62.  More specifically, to revoke a section 241.4 order of supervision, the Executive Associate Director or, if he or she is unavailable, the person authorized to act for the Executive Associate Director, must conclude that:

> (i) The purposes of release have been served;

> (ii) The [noncitizen has] violate[d] any condition of release;

> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [the noncitizen]; or

> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).

Even though De Paz Velasco's notice of revocation cites section 241.13 as the authority for revoking his release, the parties do not contest that section 241.4 governs De Paz Velasco's initial order of supervision and therefore the revocation of his release. *See* Docket Item 1 ¶¶ 3, 38-41, 96 (De Paz Velasco's section 241.4 arguments); Docket Item 7-1 at 18 (government's brief stating that "[De Paz ]Velasco rightly cites [section] 241.4 as the authority for his initial release"); *see also* Docket Item 9 at 7 (De Paz

---

[5] The regulation refers to the "Executive Associate Commissioner," but the equivalent position under the current statutory scheme is the "Executive Associate Director."  *See Ceesay*, 781 F. Supp. 3d at 160.

Velasco's argument that the notice of revocation, which cited section 241.13, was "based . . . on the wrong regulation").

This Court agrees that section 241.4 governs the revocation of De Paz Velasco's release. The Court held in a prior decision that in order for ICE to revoke an order of supervision under section 241.13, it must have issued the order of supervision under that same section—that is, ICE must have applied section 241.13's "special review procedures" when issuing it. *See Mohammad v. Kurzdorfer*, 2026 WL 657460, at *5 (W.D.N.Y. Mar. 9, 2026). Here, there is no evidence that ICE followed such procedures when issuing De Paz Velasco's order of supervision. Therefore, his order of supervision must have been issued under section 241.4, and "if ICE intended to revoke [De Paz Velasco]'s release, it was required to follow the procedures set out in 8 C.F.R. § 241.4." *See id.* (internal quotation marks and alterations omitted) (citing *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)).

### C.    Authority to Revoke De Paz Velasco's Order of Supervision

The Court now addresses the revocation of an order of supervision under section 241.4—and specifically section 241.4(l)—just as it did in *Ceesay*.[6]  *See* 781 F. Supp. 3d

---

[6] The parties agree that section 241.4(l)(2) is the relevant subsection here because De Paz Velasco did not violate a condition of his release. *See* Docket Item 7-1 at 18; Docket Item 9 at 5, 8, 10; *see also* 8 C.F.R. § 241.4(l)(1). The government argues that section 241.4(l)(2)—unlike section 241.4(l)(1)—"does not require notification of the reasons for the revocation or an informal interview." Docket Item 7-1 at 18. But the Court addressed that argument in *Ceesay* and held that that noncitizens are entitled to notice and an informal interview "when their release is revoked regardless of the reason," or more specifically, regardless of whether their release is revoked under section 241.4(l)(1) or 241.4(l)(2). *See Ceesay*, 781 F. Supp. 3d at 163-64. Nonetheless, the Court need not apply that holding here because its decision rests on whether De Paz Velasco's release was revoked by an individual who had the authority

10

at 159-62.  In that case, this Court found that the revocation of an order of supervision under section 241.4 must be signed by ICE's Executive Associate Director; in the alternative, the Court said, a revocation can be signed by a district director or another official "delegated the function or authority for a particular geographic district, region, or area," but only after finding that revocation is in the public interest and that circumstances do not reasonably permit referral of the case to the Executive Associate Director.  *See id.* (citing 8 C.F.R. §§ 1.2, 241.4(l)(2)).  If a revocation of release is not signed by one of those officials after making the requisite findings, the revocation is improper under section 241.4(l) and abridges the noncitizen's right to due process.  *See id.* at 162.  Moreover, the Court held that a petitioner whose order of supervision was not lawfully revoked under 8 C.F.R. § 241.4 is entitled to release under the conditions in the prior order of supervision.  *See Ceesay*, 781 F. Supp. 3d at 162, 170.

The revocation of De Paz Velasco's release was not signed by anyone with the authority to revoke an order of supervision under section 241.4; on the contrary, his revocation was signed by Assistant Field Office Director Michael K. Ball.  *See* Docket Item 6 at 4.  The Assistant Field Office Director is not the Executive Associate Director of ICE or a district director, and the record does not contain any delegation order giving Ball the authority to revoke release.  Moreover, even if one of those things were true, there is no evidence in the record that Ball made the required findings—that revocation is in the public interest and that circumstances do not reasonably permit referral of the case to the Executive Associate Director—before revoking De Paz Velasco's release.

---

to do so under section 241.4(l)(2)—not whether he received the required notice or informal interview.

Therefore—that is, because Ball did not have the authority to revoke De Paz Velasco's release—the revocation of his release is invalid.

The government argues that "inherent in the power to detain and the power to release [under section 1231] is the power to revoke release," Docket Item 7-1 at 8, but it otherwise does not address the procedural deficiency just noted.  The Court already has explained the regulatory framework that governs the revocation of release of a noncitizen detained under section 1231—which invalidates the government's argument.  *See supra* II.B.  And as explained above, the government conceded at oral argument that the Court's reasoning in *Ceesay* controls the outcome here.

Because there is no evidence that the official who signed De Paz Velasco's revocation of release had the authority to do so, ICE did not properly revoke De Paz Velasco's release and he therefore is entitled to be released under his prior order of supervision.  *See Ceesay*, 781 F. Supp. 3d at 162, 170; *see also Rombot*, 296 F. Supp. 3d at 389.  That prior order was conditioned only on De Paz Velasco's "appear[ing] before ICE] in person" for check-ins, notifying ICE in writing "of any change of residence or employment," and "assist[ing ICE] in obtaining . . . travel documents."  *See* Docket Item 6 at 2.  Therefore, ICE must now remove any additional conditions that are not in the prior order of supervision unless such conditions have been added consistent with ICE regulations and due process.

Because this procedural deficiency alone entitles De Paz Velasco to the relief he requests, the Court need not and does not address his other arguments.

12

**CONCLUSION**

Because ICE failed to follow its own regulations, it deprived De Paz Velasco of the process he is due.  For all the above reasons, De Paz Velasco's petition, Docket Item 1, is GRANTED, and the government's motion to dismiss, Docket Item 7, is DENIED.  Because the Court has already ordered De Paz Velasco's temporary release, *see* Docket Item 11, the Court now orders that he remain released under his prior order of supervision.  Accordingly, the conditions of his release must comply with his prior order of supervision unless they are appropriately and legally changed.


        SO ORDERED.


Dated:          May 12, 2026
                Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

13